UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAVIER SOLIS,

             Plaintiff,

v.                                     Case No. 3:20-cv-209-MMH-JRK

OFFICER G. TAYLOR and
MICHAEL NESTVED,[1]

             Defendants.

_____

## ORDER

### I. Status

Plaintiff Javier Solis, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on February 17, 2020[2] by filing a pro se Civil Rights Complaint (Doc. 1) under 42 U.S.C. § 1983. Solis is proceeding on a Second Amended Complaint (SAC; Doc. 22) against two Defendants in their individual capacities – Officer G. Taylor and Lieutenant Michael Nestved. Id. at 1-2. Solis alleges that Defendants violated his Eighth

---

[1] Defense counsel repeatedly misspells this Defendant's name. When service was executed, this Defendant confirmed the spelling of his name is "Nestved." See Return of Service (Doc. 27). The **Clerk** is directed to correct the caption of the docket to display the proper spelling of this Defendant's name – "Nestved."

[2] See Houston v. Lack, 487 U.S. 266, 276 (1988) (under the mailbox rule, pleadings are filed on the respective date that an inmate hands the pleading to prison authorities for mailing to the court).

Amendment right to be free from cruel and unusual punishment when they failed to protect him from an inmate assault. See generally id. As relief, he requests "compensatory and punitive damages in excess of $50,000 for each [D]efendant." Id. at 5.

This cause is before the Court on Defendants' Motion for Summary Judgment (Motion; Doc. 44) with exhibits (Docs. 44-1 through 44-6).[3] Solis filed a declaration and brief in opposition to the Motion. See Declaration in Opposition to Defendant[s'] Motion for Summary Judgment (Declaration; Doc. 55); Plaintiff's Brief in Opposition to Defendants' Summary Judgment Motion (Response; Doc. 56). The Motion is ripe for review.

## II. Solis's SAC

Solis alleges that on October 30, 2019, while housed at New River Correctional Institution, prison officials placed him in the disciplinary unit of G-Dormitory after finding he violated a "non-violent rule." SAC at 6. Officials placed Solis in the same cell as inmate Alfred Hall. Id. According to Solis, Hall began openly masturbating in front of Solis, so Solis "confronted Hall verbally and told him to stop." Id. at 7. Solis contends that Hall did not "cease sexual

---

[3] The Court advised Solis of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion to dismiss or motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and allowed him to respond to the Motion. See Order of Special Appointment (Doc. 10).

activity," but became very angry before climbing on his bunkbed and retrieving "a metal padlock tied to a shirt." Id. Solis asserts that Hall climbed down with the weapon and started swinging the lock while threating to kill Solis. Id.

According to Solis, he retreated and began banging on and yelling through the cell door, calling for help. Id. He maintains that eventually, Defendant Taylor, during his rounds, came to Solis's cell and Solis explained that Hall was threatening to kill Solis. Id. Hall did not deny Solis's assertion and advised Taylor, as he swung the lock, that he intended to "kill Solis" unless they were placed in different cells. Id. at 8. Solis contends that Taylor "did nothing and walked away." Id. According to Solis, ten minutes later, as Hall continued to threaten him, Taylor again approached the cell, told Solis and Hall that if they began fighting, "he would spray" them, and then walked away. Id. When Taylor left, Hall began to hit Solis with the lock "for quite a while," striking Solis in the back, head, neck, arms, and shoulders. Id. at 9.

Solis alleges that he then saw Defendant Nestved walking by, so Solis "banged and kicked on the door, yelling and screaming for help." Id. According to Solis, however, Nestved did not stop to help, despite being "close enough to observe the blood on [] Solis'[s] shirt as well as some of his facial injuries," and instead responded to Solis with profane language before walking away. Id. at 9-10. Solis contends that Hall then continued to physically attack him for "close to ten minutes," repeatedly hitting Solis with the lock and slamming Solis's

3

head into the wall. Id. at 10. Solis asserts that Captain Shimmers finally came to Solis's cell during dinner service and intervened immediately upon observing Solis's physical condition and Hall wielding the weapon. Id. Officials then sent Solis to medical where staff treated the wounds to his head. Id. at 10-11. Solis contends that Defendants Taylor and Nestved's failure to protect Solis and intervene in the inmate-on-inmate sexual assault and physical attack amounted to deliberate indifference to his Eighth Amendment rights. Id. at 12-14.

## III. Discussion

Defendants raise four arguments in their Motion: (1) Solis failed to exhaust his administrative remedies; (2) Solis failed to show that Defendants violated his Eighth Amendment rights for his "sexual assault claim"; Solis failed to demonstrate that Defendants failed to perform their administrative duties; and (4) Defendants are entitled to qualified immunity. See generally Motion.

When a defendant raises a failure-to-exhaust defense in a motion for summary judgment, the Court must treat the motion as a motion to dismiss, because the determination of whether an inmate exhausted his available administrative remedies is a matter of abatement. Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). For the reasons set forth below, the Court finds that Solis failed to exhaust his administrative remedies prior to filing this case.

As such, the Court need not address the parties' summary judgment arguments.

## A. Summary of Parties' Positions on Exhaustion

Defendants request dismissal of Solis's claims against them because Solis failed to exhaust his administrative remedies before filing suit. See Motion at 6-9. They argue Solis failed to sequentially complete the three-step administrative grievance process. Id. at 8. According to Defendants, Solis tried to initiate the grievance process for his failure-to-protect allegations by filing a formal grievance, but officials returned the formal grievance without action because he failed to first file an informal grievance. Id. They maintain that upon receipt of that return, Solis never followed the directive to file an informal grievance containing those allegations and then proceed to steps two and three of the process. Defendants also contend the only informal grievance Solis did submit lacked Solis's current allegations, and instead contained complaints about a disciplinary report Solis received for destruction of property. Id. at 9. Last, Defendants argue that Solis never filed an appeal for his claims against Defendants. Id.

In support of their assertions, Defendants provide a record of all the grievances Solis submitted between October 1, 2019, and March 30, 2020. See Docs. 44-1 through 44-3. Viewing the exhibits in chronological order, the record contains a formal grievance Solis submitted to the warden on or about

November 6, 2019; an informal grievance he submitted to the assistant warden on or about November 22, 2019; the prison officials' responses to those grievances; and a printout of the search results for grievance appeals records for "Inmate Number" "y12987" between October 1, 2019, and March 30, 2020. <u>See</u> Docs. 44-1 through 44-3. The only grievance that references Taylor and Nestved's October 30, 2019 alleged failure to protect Solis from the inmate assault is Solis's November 6, 2019 formal grievance (log # 1911-210-017). <u>See</u> Doc. 44-3 at 2. FDOC officials responded to the formal grievance (log # 1911-210-017) on November 7, 2019, advising Solis of the following:

> Your request for Administrative Remedy or Appeal has been received, reviewed & evaluated.

> Your request for administrative remedy is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103.014(f)(g), Inmate Grievance Procedure. The rule requires that you first submit an informal grievance at the appropriate level at the institution. You have not done so or you have not provided this office with a copy of the informal grievance, nor have you provided a valid or acceptable reason for not following the rules.

> Upon receipt of this response, if you are within the allowable time frames for processing a grievance you may submit your informal grievance, in compliance with Chapter 33-103, Inmate Grievance Procedure.

> Based on the foregoing information, your grievance is returned without action.

Doc. 44-3 at 1. The record before the Court contains no evidence that Solis filed an appeal seeking further review of this formal grievance or that Solis later filed an informal grievance setting forth the allegations against Defendants on which he bases the claims in this action. See generally Doc. 44-1 through Doc. 44-3. Moreover, in the informal grievance (log # 268-1912-0002) that Solis submitted on November 22, 2019, he presented only allegations regarding a disciplinary report he received for destruction of a drainage pump (Doc. 44-3 at 3). And the printout of Solis's grievance appeals shows Solis did not file any grievance appeals between October 1, 2019, and March 30, 2020 (Doc. 44-1).

In response to this evidence, Solis states he did not file an informal grievance first because under Florida's grievance procedure, he could skip the informal grievance step and file a direct formal grievance. Declaration at 2. According to Solis, his formal grievance containing allegations about Defendants "should have been treated as an 'emergency' or 'fear of reprisal' grievance." Id. Solis asserts that the formal grievance explained a "fear of reprisal" because Nestved "had a history of violently attacking or arranging attacks on inmates who filed complaints against him." Id. at 3. He contends that the formal grievance also qualified as a "grievance of an emergency nature" because Hall severely attacked him, resulting in injuries requiring specialized and continual treatment. Id. at 3-4.

7

Solis further argues that after institutional officials returned his formal grievance, he "filed a timely appeal" with the Secretary, and he notes that in his SAC, he explained he "even wr[ote] to the Secretary of D.O.C. and still [received] no response." Id. at 4-5 (citing SAC at 17). He argues that contrary to Defendants' assertion, "the absence of a computer entry does not disprove that these grievances were 'handled in a different manner[,]' lost, destroyed and therefore there was no record." Declaration at 5. Solis contends that FDOC has a long history of "selective receipt and delivery of grievances," suggesting that grievances about "misbehaving staff member[s]" routinely get "lost" or go "missing." Id. at 5. Solis asserts that at some point after he filed his formal grievance, he also filed two timely informal grievances to the warden and assistant warden, but because officials never responded to those two informal grievances and since those informal grievances are absent from his grievance records, those documents also must have been "lost or destroyed." Id. at 5-6. According to Solis, these "two informal grievances[,] . . . although technically filed after the formal grievance[,] were nonetheless sufficient to completely satisfy [his] administrative remedies as they were timely filed and filed before any action was taken on the formal grievance." Response at 5-6. Solis also maintains that the three grievances missing from the record (the above-referenced appeal and two informal grievances) "should be presumed at this point to exist" and Defendants' Motion should be denied. Id. at 5.

### B. Analysis

The PLRA requires that Solis exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Nevertheless, Solis need not "specially plead or demonstrate exhaustion in [his] complaint[]." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper

exhaustion" as set forth in applicable administrative rules and policies of the institution. <u>Woodford</u>, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

<u>Id.</u> at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" <u>Id.</u>

In <u>Ross v. Blake</u>, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In <u>Ross</u>, the Court identified three circumstances in which an administrative remedy would be considered "not available." <u>Ross</u>, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or

guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Solis] has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies:

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015).

State law "determines what steps are required to exhaust." <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1207 (11th Cir. 2015); <u>see also</u> <u>Jones</u>, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides inmates with a sequential grievance process for exhausting administrative remedies. <u>See</u> Fla. Admin. Code r. 33-103.005 through 33-103.007. Generally, to initiate the grievance process, an inmate must file an informal grievance within 20 days of "when the incident or action being grieved occurred." Fla. Admin. Code r. 33-103.011(1)(a). The responsible staff member must complete a written response to the informal grievance within 10 calendar days of receiving it. <u>See</u> Fla. Admin. Code r. 33-103.011(3)(a). If the inmate is dissatisfied with the response, or if time expires for the official to respond to the informal grievance, then the inmate may file with the warden or assistant warden a formal grievance within 15 days of receiving the unsatisfactory response or from the expiration of the time to respond. <u>See</u> Fla. Admin. Code r. 33-103.011(1)(b). If the formal grievance process does not resolve the inmate's complaint, or if time expires for the reviewing authority to respond, the inmate may proceed to the third and final step: filing an appeal to the Office of the Secretary. <u>See</u> Fla. Admin. Code r. 33-103.007(1). The inmate has 15 days to file an appeal, running from

receipt of the response to the formal grievance or expiration of the time for the official to respond. See Fla. Admin. Code r. 33-103.011(1)(c). Once a Florida prisoner has completed this three-step process, he is considered to have exhausted his administrative remedies. See Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004).

Proper exhaustion typically requires compliance with the three-step process. However, a prisoner may skip the informal grievance step and immediately file a formal grievance directly with the warden for various issues, including emergency grievances and grievances of reprisal. Fla. Admin. Code r. 33-103.006(3)(a),(c). An emergency grievance concerns "matters which, if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm to the inmate." Fla. Admin. Code r. 33-103.002(4). A grievance of reprisal is a "grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure." Fla. Admin. Code r. 33-103.002(9). If the prisoner bypasses the informal grievance stage and files a formal emergency grievance or grievance of reprisal with the warden, the prisoner must "clearly state their reasons for by-passing the informal grievance step and shall state at the beginning of Part A of Form DC1-303 . . . the subject of the grievance." Fla. Admin. Code r. 33-103.006(4). "Failure to do

so and failure to justify filing directly shall result in the formal grievance being returned without action to the inmate with the reasons for the return specified." Id.

Here, the Court finds that Solis's allegations that he exhausted his administrative remedies and that the FDOC has a history of losing grievances, taken as true, preclude dismissal of this action at the first step of Turner. See Ross, 136 S. Ct. at 1860; see also Jackson v. Griffin, 762 F. App'x 744, 746 (11th Cir. 2019) (holding disputes about availability of administrative remedies are questions of fact that can bar dismissal at Turner's first step). Thus, the Court will proceed to Turner's second step and make specific findings to resolve the disputed factual issues related to exhaustion.

In resolving the disputed factual issues, the Court finds that Solis did not complete the administrative grievance process in accordance with the procedures set forth in rule 33-103 of the Florida Administrative Code. According to Solis, he first tried to exhaust his administrative remedies by bypassing the informal grievance step and filing a formal grievance (log # 1911-210-017) with the warden, which he argues involved an emergency or a threat of reprisal. But when he submitted that formal grievance, Solis did not include allegations identifying the grievance as an emergency grievance or grievance of reprisal, and he did not state, much less clearly state, his reasons for bypassing the informal grievance step. See Doc. 44-3 at 2. This formal

14

grievance also did not include facts suggesting an emergency or that he had a fear of staff retaliating against him for using the grievance process. Id. As such, the formal grievance failed to satisfy the requirements of rule 33-103.006(4), Florida Administrative Code.

Not surprisingly, the record reflects that prison officials returned the grievance unanswered for this very reason – because it was in non-compliance with FDOC grievance procedures. Doc. 44-3 at 1. In doing so, they advised Solis that he must follow the general three-step process and first file an informal grievance. Id. Prison officials mailed the response returning the formal grievance to Solis on November 7, 2019, twelve days before the expiration of Solis's deadline to timely file an informal grievance about the October 30, 2019 inmate assault. Id. According to Solis, rather than submitting an informal grievance as directed in the return of the formal grievance, he submitted, at some unspecified time, an appeal of the return to the Central Office. See Response at 4-5. But the record evidence shows that Solis did not file any grievance appeals between October 2019, and March 2020. See Doc. 44-1. And, likely of more import, even if Solis did file such appeal, Solis assumes the Secretary would have simply disregarded the warden's return of the formal grievance, and ignored the institutional official's finding that the formal grievance was in non-compliance with administrative rules as well as their

clear written instructions that Solis must first file an informal grievance to properly initiate the grievance process.

Solis also suggests that, on some undisclosed date, he sought to comply with institutional official's directives by filing "two informal grievances, one to the warden and one to the assistant warden complaining of this incident" both of which were timely. Declaration at 5-6. According to Solis, he never received a response to either informal grievance. Id. But Solis does not allege that he then completed the three-step process by filing a formal grievance and an appeal afterward. Notably, even assuming the FDOC failed to respond to Solis's two informal grievances, "the grievance procedure provides that he could have 'proceed[ed] to the next step of the grievance process'" after the expiration of the time to respond to the informal grievances and his failure to do so renders his claims against Defendants unexhausted. See Turner, 541 F.3d at 1084 (finding that "a prison's failure to respond to a formal grievance did not relieve the prisoner of his obligation to file an appeal when the grievance procedure provided that prisoners could file an appeal if they did not receive a response to a formal grievance within 30 days."); see also Pavao v. Sims, 679 F. App'x 819, 826 (11th Cir. 2017) (finding that "[b]ecause [the plaintiff] could have proceeded by filing an administrative appeal, the PLRA still requires him to file an appeal notwithstanding the prison's lack of response.").

16

In his Declaration, Solis asserts that he should be relieved of any obligation to complete the applicable grievance process because his administrative remedies were unavailable. He argues that officials have no record of abovementioned appeal or informal grievances containing his allegations about Defendants because those grievances "were 'handled in a different manner[,]' lost, [or] destroyed" as the FDOC "has a long history and is notorious for the selective receipt and delivery of grievances." Declaration at 5. He maintains that "'missing' grievances are likely to occur when the subject matter is a misbehaving staff member especially when the complaint involves multiple staff members including those of supervisory rank." Id. But Solis's entirely conclusory assumption that his grievances were destroyed is insufficient to establish that the grievance process was unavailable to him. Solis does not allege that prison officials withheld administrative remedy forms. And, the record shows that he did have access to the necessary form for submitting an informal grievance, because he submitted one about his disciplinary report (Doc. 44-3 at 3), and he had access to the form for a grievance appeal to the Secretary, because he used that same form to file his formal grievance (log # 1911-210-017) with the warden (id. at 2). See Jenkins v. Sloan, 826 F. App'x 833, 836 (11th Cir. 2020) ("[i]f an inmate is unsatisfied with the resolution of a formal grievance, he may appeal the grievance to the

Office of the Secretary using Form DC1-303 (same form as a formal grievance)").

Further, while Solis alleges that Nestved "had a history of violently attacking or arranging attacks on inmates who filed complaints against him," he makes that allegation to support his contention that he should have been allowed to bypass the informal grievance step because formal grievance (log # 1911-210-017) was a grievance of reprisal. See Doc. 55 at 3. Thus, Solis uses Nestved's alleged retaliatory conduct to explain why he filed the formal grievance first, contradicting any suggestion that Nestved prevented Solis from filing grievances so as to render the process unavailable. See Turner, 541 F.3d at 1085 (holding that a prison official's threats of retaliation can render grievance process unavailable if: "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude" from participating in the process).

Defendants have carried their burden to show that Solis failed to exhaust his administrative remedies prior to filing this case. Thus, upon review of the parties' submissions and the file, the Court finds that this case is due to be dismissed without prejudice for Solis's failure to exhaust.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.      Defendants' Motion for Summary Judgment (Doc. 44) is **GRANTED to the extent** it seeks dismissal for Solis's failure to exhaust his administrative remedies.

2.      Solis's "(Limited) Renewed Motion to Compel" (Doc. 57) is **DENIED**.

3.      This case is **DISMISSED without prejudice.** The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of November, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-7

C:      Javier Solis, #Y12987
        Counsel of record